IN THE DISTRICT COURT FOR THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

DR. BABU SUBRAMANIAM : CIVIL ACTION
:
v. : No. 09-93
:
DR. ROBERT CENTENO, et. al. :

### MEMORANDUM

**Juan R. Sánchez, J.**                                                                                   **October 20, 2011**

Dr. Babu Subramaniam filed this civil rights action against the Juan Luis Hospital and Medical Center (the Hospital), the St. Croix District Governing Board of Directors (the Board), and the Hospital's Acting Medical Director, Dr. Robert Centeno, arising out of the termination of his employment with the Hospital. In his Complaint, Dr. Subramaniam alleges Defendants violated his First and Fourteenth Amendment rights when they fired him in retaliation for his union activities, breached the Collective Bargaining Agreement (CBA) between the Hospital and Dr. Subramaniam's union, and breached the Medical Staff Bylaws. Dr. Subramaniam also alleges Defendants breached his employment contract, breached their duty of good faith and fair dealing, slandered and defamed him, and engaged in negligent and intentional misrepresentation.

Defendants seek an order compelling Dr. Subramaniam to submit all of his claims to arbitration under the CBA. Defendants argue arbitration is the exclusive process for resolving any "complaint, dispute or controversy . . . as to the interpretation, application or performance of [the CBA]." Pl.'s Mot. Prelim. Inj. Ex. 2 at 8 (CBA) [hereinafter cited as "CBA"]. Dr. Subramaniam opposes the motion on several grounds. First, Dr. Subramaniam argues the Defendants either repudiated the CBA or waived their right to arbitrate. Second, Dr. Subramaniam argues arbitration is impossible because Defendants failed to suggest a list of arbitrators as the CBA requires. Third,

Dr. Subramaniam argues arbitration would be futile because Defendants have failed to conform to the CBA in the past . Lastly, Dr. Subramaniam argues some or all of his claims are not subject to arbitration. For the following reasons, Defendants' Motion to Compel Arbitration is granted as to Counts III through IX, but is denied as to Counts I and II. This case shall be stayed pending arbitration.

**FACTS**

Dr. Subramaniam is a licensed neurologist and former employee of the Hospital. Dr. Subramaniam was recruited by the then-Chief Medical Officer, Dr. Claudius Henry, in 2001. The Hospital terminated Dr. Subramaniam on October 23, 2009, based on his "chronic and persistent refusal to comply with his essential job duties." Def. Centeno's Mot. to Compel Arb. 2.[1] Dr. Subramaniam claims the Hospital discharged him without cause in retaliation for his union activities.

Dr. Subramaniam does not dispute his employment with the Hospital was subject to the CBA, which governs various aspects of the employment relationship. The CBA gives the Hospital broad authority with respect to hiring and firing of physicians and the adoption and revision of job descriptions. *See* CBA 3-4. Under the CBA, the Hospital "retains the exclusive right to . . . discharge or suspend an employee for just cause." *Id.* at 7. The CBA also outlines the procedure for resolving complaints relating to termination. The exclusive means for resolving any "grievances" under the CBA is arbitration. Grievances are defined as "a[ny] complaint, dispute or controversy between the

---

[1] More specifically, Defendants allege Dr. Subramaniam was terminated for his "failure or refusal to appear for neurological consultation requested by treating physicians . . . ; his refusal to commit to a specific on-call schedule . . . ; and his refusal – despite being 'counseled' on four separate occasions in 2009 – to serve as admitting physician . . . for patients hospitalized primarily for neurological conditions." *Id.*

2

parties as to the interpretation, application or performance of [the CBA]." *Id.* at 8. Dr. Subramaniam filed two grievances against the Hospital. Although Dr. Subramaniam's employment is subject to the CBA, he failed to demand arbitration and instead elected to file his Complaint.[2]

**DISCUSSION**

In deciding a motion to compel arbitration this Court must determine: "(1) [whether] the parties . . . enter[ed] into a valid arbitration agreement [and] (2) [if] the dispute between those parties fall[s] within the language of the arbitration agreement." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998). "[D]istrict courts need only 'engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *Id.* (quoting *PaineWebber v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)). There is a "strong presumption in favor of arbitration," and any questions "concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir.1997).

In this case, the CBA contains an arbitration clause that provides all complaints, disputes, or

---

[2] The grievance procedure specified in Article V of the CBA provides, in relevant part:

> Step 1:
> The matter shall first be reduced to a writing on a grievance form which sets forth the facts and circumstances of the alleged grievance, the part of the Agreement alleged to have been violated and the relief sought . . . .
>
> Step 2:
> If the Step 1 [decision] is not acceptable to the Union, . . . the Union may submit a written notice of its desire to arbitrate the matter . . . [and] the parties shall . . . select an impartial arbitrator by drawing, at random, a name from a list of at least five (5) permanent arbitrators to be herein after chosen by the parties in a mutually agreeable manner.

CBA 8.

controversies relating to the CBA are subject to binding arbitration. Dr. Subramaniam does not dispute that as an employee of the Hospital, he was bound by the terms of the CBA. Nor does he allege any fraud in the inducement of his employment contract. Indeed, Dr. Subramaniam filed two prior grievances against the Hospital using the CBA's grievance procedures. Under the CBA, a valid arbitration agreement exists.

This Court turns next to the issue of whether the dispute is within the scope of the CBA's arbitration clause. Where an arbitration agreement exists, a motion to compel arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *Beck v. Reliance Steel Prods. Co.*, 860 F.2d 576, 579 (3d Cir. 1988). Here, Dr. Subramaniam asserts Defendants retaliated against him for his union activities (Counts I and II), violated and breached the CBA (Counts III-VIII), and slandered his professional reputation (Count IX).[3]

Dr. Subramaniam's involvement with the union was related to his role as an employee of the Hospital. Dr. Subramaniam's challenge to his termination is the kind of "controversy" the arbitration agreement contemplates. Counts I and II are therefore within the scope of the arbitration agreement because they raise a grievance "between the parties as to the . . . performance of [the CBA]." CBA 9.

---

[3] Specifically, Dr. Subramaniam alleges Defendants: (1) violated his rights under the First and Fourteenth Amendments (Count I); (2) violated his civil rights under 42 U.S.C. § 1983 (Count II); (3) violated the Constitution, the Bylaws, the CBA, and the "manuals" (Count III); (4) violated the CBA by disregarding a previous grievance decision (Count IV); (5) violated the Bylaws, the CBA, and "manuals" (Count V); (6) breached his employment contract (Count VI); (7) intentionally or negligently misrepresented terms and conditions of the employment contract (Count VII); (8) breached their duty of good faith and fair dealing (Count VIII ); and (9) slandered and defamed him (Count IX).

Although Counts I and II are within the scope of the arbitration agreement, the agreement may nevertheless be unenforceable if it is preempted by federal statutes. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). When Congress has expressed a clear intention to provide a judicial remedy for violations of certain rights, a party cannot contract away that right through an arbitration agreement. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

In *Tripp v. Renaissance Advantage Charter School*, No. 02-9366, 2003 WL 22519433 (E.D. Pa. Oct. 8, 2003), the court considered whether an arbitration agreement was enforceable where the parties agreed to arbitrate the plaintiff's claims for retaliatory discharge pursuant to § 1983 and the First Amendment. Although the court noted § 1983 predates the Federal Arbitration Act and legislative history of § 1983 was therefore unlikely to reveal overt intent by Congress to preclude waiver of judicial remedies, the court found it would "dilute the effectiveness of § 1983" to require such claims be submitted to arbitration. *Id.* at 10. In light of the Supreme Court's repeated recognition that the "dominant characteristic of Section 1983 claims [is that] they belong in court," the court found an inherent conflict exists between the purposes of § 1983 and arbitration. *Id.* The court thus held the arbitration agreement unenforceable with respect to the plaintiff's § 1983 and First Amendment claims.

The same analysis applies here. As in *Tripp*, Counts I and II of Dr. Subramaniam's Complaint are inarbitrable because of an inherent conflict between § 1983 and arbitration.

Unlike Counts I and II however, Counts III through VIII arise either directly or indirectly from the CBA. Counts III through V expressly assert a violation of the CBA and are, therefore, within the scope of the agreement.

Although Counts VI through VIII do not allege a direct violation of the CBA, those counts also raise issues within the scope of the agreement. With respect to Count VI, Dr. Subramaniam alleges

Defendants breached the employment contract when they attempted to change his job description. Count VI is subject to the CBA because it implicates at least two provisions of the agreement. First, Article II of the CBA grants the Hospital "the right, in its discretion, to adopt, amend, revise or revoke any job description." CBA 3. Any controversy concerning a right the Hospital expressly established in the CBA is within the scope of the agreement. Second, the CBA provides "there shall be no individual contracts relating to the terms and conditions of employment." CBA 19. Dr. Subramaniam alleges there was either an implied or oral contract as to the terms of his employment. Regardless of whether a separate employment contract existed, the alleged breach comes within the language for resolving controversies as to the application of the CBA.

Count VII alleges misrepresentation in the terms of Dr. Subramaniam's employment, which are defined in the CBA. Count VIII alleges breach of the duty of good faith and fair dealing, a duty applied only to contracts. For the same reasons as Count VI, the application of the CBA as the contract at issue comes within the language of the agreement. Therefore, these claims are within the scope of the agreement and are subject to arbitration.

In determining whether Dr. Subramaniam's claims for slander and defamation (Count IX) fall within the scope of the arbitration clause of the CBA, a different analysis is required. Slander and defamation claims may be considered within the scope of an arbitration agreement if they "involve significant aspects of the employment relationship or [if] resolution of the tort claims will require an evaluation of either the employee's or the employer's performance in the course of the employment relationship." *Stone v. Pa. Merchant Grp, Ltd.*, 949 F. Supp. 316, 324 (E.D. Pa. 1996). Because Dr. Subramaniam alleges Defendants published several defamatory letters to hospital staff members

regarding his performance,[4] his slander and defamation claim requires an evaluation of his performance, duties, and employment relationship with the Hospital. Accordingly, the slander and defamation claim is within the scope of the arbitration agreement and is therefore subject to arbitration.

Dr. Subramaniam argues that even if a valid arbitration agreement exists and the claims are within the scope of the agreement, Defendants have either repudiated the arbitration agreement or waived their right to arbitration. Dr. Subramaniam argues Defendants repudiated the arbitration agreement because they failed to comply with the grievance procedures specified therein. This argument lacks merit. "Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract." *Local Union No. 721 v. Needham Packing Co.*, 376 U.S. 247, 251-52 (1964). Defendants cannot be said to have repudiated the arbitration agreement because Dr. Subramaniam never sought to enforce his rights under the CBA by filing a request to arbitrate under Step 2 of the CBA.

Whether Defendants have waived their right to arbitrate turns on whether their actions or omissions are inconsistent with arbitration. *See Gray Holdco, Inc. v. Cassady*, No. 10-4325, 2011 U.S. App. LEXIS 17032, 4-5 (3d Cir. Aug. 17, 2011). "[P]rejudice is the touchstone for determining whether the right to arbitration has been waived." *Hoxworth v. Blinder, Robinson & Co., Inc*, 980 F.2d

---

[4] Dr. Subramaniam alleges acting Medical Director Dr. Centeno published defamatory letters concerning Dr. Subramaniam on June 29, 2009, July 7, 2009, and September 14, 2009. Dr. Subramaniam alleges the June 29 letter falsely accused him of refusing to evaluate patients and the July 7 letter falsely cited a deficient competency review. Dr. Subramaniam's Complaint does not specify the false information in the September 14 letter. Prior to these letters, Dr. Subramaniam also alleges then-Medical Director Dr. Griffith published a letter on October 4, 2005, falsely citing Dr. Subramaniam's failure to consult with admitted patients.

912, 925 (3d Cir. 1992).[5] Absent prejudice to the plaintiff, the time delay between filing a complaint and a demand for arbitration is not dispositive of whether a defendant waived its right to arbitrate. In this case, Defendants have not engaged in any conduct inconsistent with arbitration. Defendants raised arbitration as an affirmative defense in their Answer, in their Motions to Dismiss, and in their Motion to Compel Arbitration. Defendants have not done anything to contribute to the litigation process. Nor have Defendants led Dr. Subramaniam to believe they did not intend to pursue arbitration.

This is not a situation where a defendant litigated the case and later changed strategies and moved to compel arbitration. Defendants' participation in the litigation process thus far has been limited and defensive. Defendants did not contest the merits of Dr. Subramaniam's case but merely responded to Dr. Subramaniam's motion for a preliminary injunction. Although Defendants filed over 100 pages of exhibits in opposition of the motion, their production did not prejudice Dr. Subramaniam. Defendants cannot be said to have done anything to contribute to the litigation process when their only litigation has been to respond to Dr. Subramaniam's motion. To hold otherwise would allow plaintiffs to goad defendants into responding to motions which effectively waive their right to compel arbitration.

---

[5]
> A determination of prejudice . . . relevant to a finding of waiver of the right to arbitrate thus incorporates . . . [1] the timeliness or lack thereof of a motion to arbitrate . . . ; [2] the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims . . . ; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings . . . ; [4] the extent of its non-merits motion practice; . . . [5] its assent to the district court's pretrial orders . . . ; [6] and the extent to which both parties have engaged in discovery.

*Id*. at 926-27.

Having determined a valid arbitration exists and several of Dr. Subramaniam's claims are arbitrable, the Court next turns to the issue of whether arbitration would be impossible. Dr. Subramaniam alleges arbitration would be impossible because Defendants have failed to suggest arbitrators. This Court disagrees. There is nothing in Article V of the CBA requiring Defendants to suggest potential arbitrators first. Article V directs parties to select a list of arbitrators in a "mutually agreeable manner" from which an impartial arbitrator will be randomly chosen. CBA at 8. If the parties cannot agree to a list, upon petition, the Court "shall designate and appoint an arbitrator." 9 U.S.C. § 5. Arbitration is thus possible.

Lastly, this Court considers Defendants' motion to stay the proceedings pending arbitration. Once the Court grants a motion to compel arbitration, "the [Federal Arbitration Act] clearly states . . . the Court 'shall' upon application stay the litigation until arbitration has been concluded." *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004) (citing 9 U.S.C. § 3). Because this Court finds Counts III through IX of Dr. Subramaniam's Complaint are subject to arbitration under a valid and enforceable arbitration agreement, this case is stayed pending the results of the arbitration proceedings.

Accordingly, Defendants' Motion to Compel Arbitration is granted as to Counts III through IX, and denied as to Counts I and II. This case shall be stayed pending arbitration.

An appropriate order follows.

BY THE COURT:

\s\ Juan R. Sánchez, J.
Juan R. Sánchez, J.